NORTHEAST WHOLESALE FLOWER CORPORATION, INC. *vs.* BOSTON FLOWER EXCHANGE, INC.

Suffolk.   February 8, 1955. — March 9, 1955.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Custom.   Contract,* Custom.   *Market.*

In a suit in equity to compel the operator of a flower exchange to allow the plaintiff to act as a commission agent in the exchange for the sale of flowers in behalf of one who had leased space there from the defendant, a decree dismissing the bill was proper where it appeared that there existed a long established and universal custom, impliedly incorporated in the lessee's lease although not mentioned therein, that lessees could not allow commission agents to act for them in the exchange without first obtaining permission from the defendant, and that the lessee's request that the plaintiff be permitted to act as his agent had been refused by the defendant.

BILL IN EQUITY, filed in the Superior Court on February 16, 1953.

332 Mass. 388 389

Northeast Wholesale Flower Corp. Inc. *v.* Boston Flower Exchange, Inc.

The suit was heard by *Nagle, J.*

*Max Kabatznick, (George Michaels & Marvin N. Geller* with him,) for the plaintiff.

*Francis P. Wilcox, Jr.,* for the defendant.

RONAN, J. This is an appeal from a final decree dismissing a bill of complaint brought to compel the defendant to allow the plaintiff to act as a commission dealer for the sale of flowers for one Given upon the floor of the Boston flower exchange at the space leased to Given by the defendant, and for damages.

The judge made a report of the material facts, and we have a transcript of the evidence. The facts may be briefly summarized. The defendant conducts a flower exchange on its premises in Boston on which is located a one story building with a basement. The first floor consists of a large room over which there is a glass dome or ceiling approximately one hundred feet in diameter. The defendant rents space to New England flower growers and in certain instances to commission salesmen. Although the spaces rented are referred to as stalls, the space itself usually consists of the top or a part of the top of a table, four or five feet square, where the growers display flowers to retail florists and dealers. The defendant on February 1, 1951, leased to Given "Stall No. 283" for the term of one year ending on January 31, 1952, and for a term thereafter to continue on and after said date from year to year until either party on or before December 31 during the term of the lease should notify the other in writing that he intended to terminate the lease on the following January 31. The lease has since continued in full force and effect. Given in December, 1952, made an arrangement with the plaintiff in accordance with which the plaintiff agreed to sell on commission, at the stall leased to Given, flowers grown by Given. The written request of Given dated December 27, 1952, to the defendant to permit the plaintiff to act as commission agent for him in this market place was refused by the defendant. It was the long established and universal custom that, although not mentioned in the leases,

the lessees could not permit or allow commission agents to act for them on the floor of the exchange without first obtaining permission from the defendant.

The defendant in its answer sets up various defences. It admits that it refused to allow the plaintiff to act as a commission dealer for Given in selling flowers in the exchange and based the refusal upon different grounds including a business custom and usage of the defendant. We need discuss only this defence for we are satisfied that the judge was not plainly wrong in finding the existence of such a custom. *Warner* v. *Selectmen of Amherst,* 326 Mass. 435. *291 Washington St. Inc.* v. *School St. Liquors, Inc.* 331 Mass. 150. That was a question of fact. *Daniels* v. *Hudson River Fire Ins. Co.* 12 Cush. 416, 429. *Cronan* v. *Hornblower,* 211 Mass. 538, 541. *Berwick & Smith Co.* v. *Salem Press, Inc.* 331 Mass. 196, 198.

The defendant was incorporated in 1909 and was really an outgrowth of a coöperative association which was formed in 1892 so that the New England growers of flowers and plants would have a market in which to dispose of their products. Many of the growers are stockholders of the defendant. The market place has about 300 stalls. A substantial percentage of the cut flowers and plants raised in New England for sale in the Boston market are sold at the exchange. The cost to the growers for availing themselves of the advantages of the market does not appear to be expensive. The monthly rental of Given was only $13.20. The orderly operation by the defendant of the exchange requires supervision by the defendant over the conduct of those who use its facilities. Their character, integrity, and financial ability must be such that the reputation of the exchange will not be injured. Outside or competitive interests of proposed commission merchants must not be permitted if in the judgment of the directors it would be better for the defendant that they should not be allowed to do business on the floor of the exchange. The plaintiff was engaged in selling flowers on commission in one of the numerous flower shops in the vicinity of the exchange.

It is well settled that a long established and universal custom or usage which is not violative of some law or public policy and where there is nothing in a contract showing that it is not to be included is impliedly incorporated in the contract. *A. J. Tower Co.* v. *Southern Pacific Co.* 184 Mass. 472. *Baccari* v. *B. Perini & Sons, Inc.* 293 Mass. 297. See also *Barrie* v. *Quinby,* 206 Mass. 259; *South Deerfield Onion Storage Co.* v. *New York, New Haven & Hartford Railroad,* 222 Mass. 535; *Rice & Lockwood Lumber Co.* v. *Boston & Maine Railroad,* 308 Mass. 101; *Caggiano* v. *Marchegiano,* 327 Mass. 574.

The final decree dismissing the bill is affirmed with costs of the appeal.

*So ordered.*